IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| MAXIMILIAN I. GROSS, ) | |
| ) | |
| Plaintiff ) | |
| ) | Case No.: 1:17-cv-04889 |
| v. ) | |
| ) | Judge Ruben Castillo |
| FCA US LLC, and ) | |
| ZACHERY M. NICHOLSON, ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| ZACHERY M. NICHOLSON, ) | |
| ) | |
| Defendant & Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FCA US LLC, ) | |
| ) | |
| Defendant & Counter-Defendant.) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO REMAND**

Defendant Zachary Nicholson ("Zach") files this Memorandum of Law in Support of his Motion to Remand pursuant to 28 U.S.C.S. § 1447.

### I. INTRODUCTION

This matter should be remanded to the Cook County Circuit Court where it has pended since August 2016 for a variety of dispositive reasons. *First*, Zach and Plaintiff were each domiciled in Illinois at the time of filing and, therefore, there is no complete

1

diversity. *Second*, Zach was sued in his home state of Illinois which prevents removal. *Third*, FCA US LLC ("FCA US") never obtained Zach's consent to removal as required by 28 U.S.C.S. § 1441(a) when Zach is not a "nominal" defendant. *Finally*, FCA's Notice of Removal is untimely as it received "other papers" long before Zach's deposition indicating that he was stationed in Kentucky and had a driver's license issued by the State of North Dakota at the time of the underlying wreck. Because of this, FCA US could not have "first ascertained that the case is one which is" removable upon receipt of Zach's deposition transcript. For all these reasons, Zach respectfully asks that the case be remanded to Cook County Circuit Court.

## II. RELEVANT FACTS

Zach is a 22 year old Specialist in the United States Army's 101st Airborne Division. (Exhibit C to FCA US's Notice of Removal, Zach Nicholson deposition (hereafter, "Exhibit C"), pgs. 6, 17). Zach enlisted in the Army for a 3-year period after graduating from Fargo South High School in North Dakota. (*Id.* at pgs. 8-11). He is stationed at Fort Campbell, Kentucky and is responsible for training new soldiers. (*Id.* at pgs. 6, 17-18). Despite being stationed there, Zach has never considered Fort Campbell to be his home or domicile. (*Id.* at pgs. 29-30, 111).

```
PG 111
   . . . Is that how it is for you being in the
12   Military when you're at Fort Campbell or
13   Afghanistan?
14     A.   Yes, just I don't really consider Fort
15   Campbell like my home or nothing, just I don't
```

2

16  really, no, other than friends there, just --
17  just like I said earlier, Fort Campbell is kind
18  of like my -- where I work and stuff.

Shortly after joining the Army, Zach and fellow soldier Max Gross became close friends. (*Id.* at pgs. 111; 115). Their lives changed in March 2016 as they traveled to Illinois for Easter break. (*Id.* at pg. 45). Zach was behind the wheel of Max's Dodge Caliber when it left the roadway in Indiana. Max's side of the roof crushed down on him.



After the wreck, Zach tried to speak to Max but he stopped responding. (*Id.* at pg. 115). Zach thought Max was dead or may die. (*Id.* at pg. 117).

After being released from the hospital in Indiana, Zach went to Chicago to see Max where he was being treated. (*Id.* at pg. 117). Zach learned for the first time in Chicago that Max was paralyzed. (*Id.* at pg. 118). It was the hardest day of Zach's life

3

and he continues to have difficulty dealing with the wreck and its repercussions. (*Id.* at pgs. 115, 118).

Zach continued to come to Cook County, Illinois to visit Max after the wreck and would do what he could to help care for him. (*Id.* at pgs. 37, 95, 112). Zach wanted to be near Max and continue to help care for him so he took steps to establish residency in Cook County.

```
22    Q. When did you decide to change your home
23  or where you intended to go from North Dakota to
24  Chicago?
112
1     MR. McCASKEY: Object to the form,
2   foundation.
3     THE WITNESS: After everything happened with
4   Max and stuff.
5   BY MR. CUSTY:
6     Q. Why you want to be here?
7     A. Yes.
8     Q. What is the reason for that?
9     A. Just he was my best friend there at
10  Fort Campbell, and after everything that
11  happened, I just feel like I should be with him
12  and stuff, and that is what he wants, too, as
13  well, and yes.
```

Max Gross also confirmed that Zach intends to learn how to care for him and help out. Exhibit 1, Deposition of Max Gross, pg. 50. Zach signed a lease for an apartment in downtown Chicago shortly after the March 2016 wreck. (*Id.* at pgs. 35, 113). Zach has keys to the apartment and it is available to him whenever he comes to Chicago. (*Id.* at pgs. 113-14.). Zach considers the Chicago apartment to be his permanent address. (*Id.*).

Zach also registered to vote in Chicago and traded in his North Dakota driver's license for an Illinois driver's license after the wreck. (*Id*. at pg. 114).

Zach was in Cook County with Max in July, 2016 before he deployed to Afghanistan from August until May, 2017. (*Id*. at pgs. 39-40, 15, 22).

```
PG 114
21    Q.  Before you deployed for Afghanistan it
22   was your intent to return to Chicago, and
23   Chicago would be your home?
24      MR. McCASKEY: Objection, form.
115
1     THE WITNESS: Yes.
```

Zach's downtown apartment in Chicago was his first off-base visit when he returned from Afghanistan in May, 2017. (*Id*. at pg. 120). Zach was in Chicago for over a week and spent time with Max[1]. (*Id*. at pgs. 39, 120-21). All told, Zach has traveled to and stayed in Illinois during every Army leave he has had in the last few years. (*Id*. at pgs. 33, 37).

Zach has additional contacts who live in Illinois including a grandfather and a girlfriend. (*Id*. at pgs. 31-32, 37). If Zach does not re-enlist in the Army, he plans to apply to work with METRA in Chicago. (*Id*. at pgs. 11-12).

---

[1] FCA claims that Zach came to Chicago for his deposition in May 2016 but, in reality, Zach planned to be in Chicago and his deposition was scheduled only after undersigned let FCA's counsel know he would be in the area during that time period.

5

### III. PROCEDURAL HISTORY

Max filed suit on August 2, 2016 in Cook County, Illinois against FCA US and Zach for negligence and also brought product liability claims against FCA US. FCA US alleged in its Answer to Max's Complaint that Zach was responsible for his injuries. *See* FCA US's Affirmative Defenses contained in Exhibit J to its Notice of Removal, pgs. 154-55.

Zach filed a Counterclaim against FCA US which it moved to dismiss. After briefing, the Court granted Zach leave to amend two of his claims. FCA US then moved to dismiss Zach's most recently filed Counterclaim before seeking removal of the action on June 29, 2017.

The parties exchanged written discovery, sought and received various orders from the court, and conducted oral discovery of numerous fact witnesses prior to FCA US's Notice of Removal. Zach was not asked and did not consent to or join in FCA US's attempt to remove this action to federal court.

### IV. ARGUMENT

Removal is a purely statutory right that limits the state's judicial powers; as such, its requirements must be strictly construed. *Mechanical Rubber & Supply v. American Saw & Mfg.*, 810 F. Supp. 986, 989 (C.D. Ill. 1990). The party petitioning for removal bears the burden of establishing that all of the requirements for removal have been met. *Fellhauer*

6

*v. City of Geneva*, 673 F. Supp. 1445, 1447 (N.D. Ill. 1987); *Doe v. Allied-Signal Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)("Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum."). "District courts should remand close or doubtful cases" to "avoid the possibility of a later determination that the district court lacked jurisdiction and, secondly, remand is normally to a state court which clearly has jurisdiction to decide the case." *Glenmede Tr. Co. v. Dow Chem. Co.*, 384 F. Supp. 423, 433-34 (E.D. Pa. 1974).

    **a. This Action is Properly Remanded Because Plaintiff and Zach Are Both Citizens of Illinois**

A suit with citizens of Illinois on both sides cannot be removed under the diversity jurisdiction. *MB Fin., N.A. v. Stevens*, 678 F.3d 497, 500 (7th Cir. 2012). Accordingly, this matter must be remanded as Plaintiff and Zach were both citizens of the State of Illinois when the Complaint was filed.

"In federal law citizenship means domicile, not residence." *Am.'s Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992). Residence is where a person lives. An individual's domicile, on the other hand, "is the place where that individual has a true, fixed home and principal establishment, and to which, whenever that person is absent from the jurisdiction, he or she has the intention of returning." *Wright & Miller*, 13E Fed. Prac. & Proc. Juris., § 3612 (3d ed.). "Domicile, therefore, has both a physical and a mental dimension." *Id*.

Courts primarily look at intent through objective factors. *See Sadat*, 615 F.2d at 1181 ("[i]ntent is a state of mind which must be evaluated through the circumstantial evidence of a person's manifested conduct"). Some of the objective factors relevant to a person's intent include "current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments." *Midwest Transit, Inc.*, 79 Fed. App'x at 208. "The existence of one or more of these factors may weigh in favor of a finding of citizenship, but no single factor is conclusive." *Id.* For this reason, each case necessarily turns on its own unique combination of facts. *Strabala v. Zhang*, 318 F.R.D. 81, 97-98 (N.D. Ill. 2016).

Zach's service to our country also impacts the Court's analysis. As the Court stated in *United States v. Highwood*, 712 F. Supp. 138, 143 (N.D. Ill. 1989):

> . . . servicemen change their domicile only in certain circumstances, and that the rule is clear that a 'serviceman is presumed not to acquire a new domicile when he is stationed in a place pursuant to orders; he retains the domicile he had at the time of entry into the service.' *Wright, Miller and Cooper,* Federal Practice and Procedure: Jurisdiction 2d 3617 at 566 (1984) (other citations omitted). And that presumption can be rebutted only with 'clear and unequivocal evidence.' *Codagnone v. Perrin*, 351 F.Supp. 1126, 1229 (D. R. I. 1972).

*See also United States v. Highwood,* No. 88 C 4827, 1989 U.S. Dist. LEXIS 6622, at *2 (N.D. Ill. June 8, 1989); *see also Vitro v. Town of Carmel*, 433 F.Supp. 1110, 1112 (S.D.N.Y. 1977); *Bowman v. DuBose*, 267 F.Supp. 312, 313 (D.S.C. 1967) ("It is well-settled [that a

8

serviceperson] retains his domicile as of date of enlistment unless he indicates an intent to abandon such original domicile and adopt a new one.").

Following the March 2016 wreck, Zach established a true fixed home in Illinois which he intended to return to whenever he was outside of the state. *Wright & Miller*, 13E Fed. Prac. & Proc. Juris., § 3612 (3d ed.); *see also* Exhibit C, pgs. 35, 37, 95, 111-12, 113-14, 120-21). Zach manifested the intent necessary to establish a domicile in Illinois by leasing an apartment in downtown Chicago, registering to vote in Illinois, trading in a North Dakota driver's license and obtaining an Illinois driver's license, continually visiting Chicago on each and every leave he had from the Army and maintaining relationships with his grandfather and girlfriend in the State of Illinois. As set forth in *Midwest Transport*, any one of these factors alone may weigh in favor of a finding of citizenship in Illinois. Zach has also literally proven his original intent to make Illinois his domicile by returning to the state on his first extended leave following his August 2016-May 2017 deployment in Afghanistan.

Zach's intent for Illinois to be his domicile is shown through action, qualifying objective factors, circumstance and sworn testimony. No other state comes close. FCA US's argument that Zach is a citizen of Kentucky ignores Zach's clear sworn testimony, his actions and the law. Under applicable law, Zach is presumed to not have established a domicile in Kentucky absent clear and unequivocal evidence because he was there on orders from the Army. *Highwood*, 712 F. Supp. At 143 and additional cases *supra* at pg. 8.

The types of factors FCA US proposes establish clear and unequivocal evidence that Zach intended to change his domicile to Fort Cambell, Kentucky have previously been addressed in the Northern District of Illinois. In *Highwood*, the court found that servicemen's registration of vehicles and obtaining drivers licenses in Illinois did not present "clear and unequivocal" evidence of an intent to change domicile. Instead, the court determined that these acts were merely "matter[s] of convenience" and "ties to be expected wherever a servicemen is stationed." *Highwood*, 712 F. Supp. at 143 (N.D. Ill. 1989). Kabul, Afghanistan could also be Zach's domicile if the Court were to follow FCA US's reasoning because he also engaged in "matters of convenience" while stationed there for 9 months. In the end, neither location suffices (or makes sense) because Zach was only in each location on orders and manifested his clear and unequivocal intent to establish a domicile in Illinois.

Likewise, North Dakota is not Zach's domicile. Zach does not consider North Dakota to be his home and does not plan to return there once he leaves the Army. (Exhibit C at pgs. 111-12, 114-115.). Zach has rarely traveled to North Dakota since graduating high school in 2014 and his only connection to the state is that his mother lives there. (*Id*. at pg. 27). Further, Zach surrendered his North Dakota driver's license in order to obtain an Illinois driver's license and is not registered to vote in North Dakota. (*Id*. at 114). Moreover, Zach does not own property in North Dakota and there is no evidence that Zach ever voted there, receives mail there, or filed tax returns there.

10

Zach's true domicile is Illinois and, therefore, this matter should be remanded. FCA US's argument that multiple other jurisdictions may be Zach's domicile at the time this matter was filed defy Zach's actions and unequivocal testimony. Moreover, the fact that FCA US argues that Zach may have domicile in Kentucky or maybe in North Dakota (anywhere but Illinois) alone makes this a close or doubtful case at best which requires remand. *See* introduction to § IV "Argument", *supra*.

### b. This Action Should Remanded Because Zach Was Sued in His Home State

28 U.S.C.S. § 1441(b)(2) prohibits the removal of a state court action "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." As set forth above, Zach's domicile is Illinois and he was served with the Complaint in this matter. Further, FCA US cannot argue that Zach is an improper defendant or not a party in interest because it has affirmatively pled that Zach is responsible for Max's injuries. *See* Exhibit J to FCA US's Notice of Removal at pg. 154-55. Therefore, the matter should be remanded as Zach was a party in interest who was sued in his own home state.

### c. This Action is Properly Remanded Because Every Non-Nominal Defendant Did Not Consent to Removal

Every non-nominal defendant must join in the notice of removal and failure to include all such defendants is a fatal flaw requiring that the case be remanded. *Chicago, Rock Island & Pacific Ry. Co. v. Martin,* 178 U.S. 245, 248, 44 L. Ed. 1055, 20 S. Ct. 854

(1900); 28 U.S.C.S. § 1441(a). A defendant is nominal if there is no reasonable basis for predicting that it will be held liable. *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993). In this case, Zach was neither asked nor did he consent to removal. Therefore, remand is appropriate, unless an exception to the above rule applies. *Keys v. Konrath*, 93 C 7302, 1994 U.S. Dist. LEXIS 2814, at *2-5 (N.D. Ill. Mar. 9, 1994).

The first potential exception is that removal petitions may be freely amended during the statutory period in which a petition could be brought. *Id*. In this case, the removal petition was not amended and Zach does not consent to removal. Thus, this exception does not aid FCA US. A second exception arises if a defendant has not been served by the time the notice of removal is filed. *Id*. Likewise, this exception does not save FCA US's removal effort as all defendants were previously served. Finally, FCA US cannot argue that Zach is a nominal defendant when its answer to the operative Complaint attributes fault for Max's injuries to Zach. *See* Exhibit J to FCA US's Notice of Removal at pgs. 154-155.

FCA US claims that Zach's consent was not needed for its Notice of Removal because Zach was "alleged to be an Illinois citizen for the sole purpose of defeating jurisdiction." FCA US then cites the *Cardona* case for the proposition that "'fraudulently' joined defendants are not required to participate or consent in removal petition." A read of *Cardona*, however, shows that the case turned on whether or not the named defendant was a "nominal defendant" insofar as it provides "defendants are deemed to

be fraudulently joined when there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court . . . . " *Cardona v. Kozak*, No. 91 C 0967, 1991 U.S. Dist. LEXIS 10494, at *8 (N.D. Ill. July 26, 1991). As stated above, FCA US has already affirmatively pled that Zach was responsible for Plaintiff's injuries so he cannot be a "nominal" or "fraudulently joined" Defendant. FCA US's attempt to avoid obtaining the consent of all defendants to removal fails and this case should be remanded.

### d. This Action is Properly Remanded Because FCA US's Notice of Removal is Untimely

FCA US claims that it's Notice of Removal is timely because it was filed within 30 days of receiving a copy of Zach's deposition which is an "other paper" under 28 U.S.C.S. § 1446(3). That section provides:

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. 28 U.S.C.S. § 1446(3).

However, the definition of "other papers" contains much more than a deposition. "Courts construe the 'other paper' requirement to include 'papers that are part and parcel of the State Court proceedings having their origin and existence by virtue of the State Court process.'" *Rooflifters, LLC v. Nautilus Ins. Co.*, No. 13-C-3251, 2013 U.S. Dist. LEXIS 107936, 2103 WL 3975382, at *6 (N.D. Ill. Aug. 1, 2013) (internal quotation marks omitted) (quoting *Gilardi v. Atchinson, Topeka and Santa Fe Railway Co.*,

13

189 F. Supp. 82, 85 (N.D. Ill. 1960)). "Other papers" for purposes of 28 U.S.C.S. § 1446(3) include such "papers" as discovery depositions, interrogatory answers, or any official papers filed with the action. *Hernandez v. Schering Corp.*, No. 05 C 0870, 2005 U.S. Dist. LEXIS 9570, 2005 WL 1126911, at *2 (N.D. Ill. May 5, 2005) (internal citations omitted).

In this case, discovery was produced long before Zach's deposition showing that he obtained an Illinois driver's license after the wreck and secured a residence in Chicago. Moreover, the police report for the wreck indicates that Zach's driver's license at the time was issued by the State of North Dakota. Finally, Zach's own pleadings in the case filed months ago indicate that he was stationed at Fort Cambell, Kentucky at the time of the wreck.

FCA US's claim that its recent receipt of Zach's deposition was an "other paper from which it **may first be ascertained** that the case is one which is or has become removable" is without merit. FCA US received numerous "other papers" long before it received Zach's deposition transcript and Zach's deposition only affirmed that the case was not properly removed as set forth *supra*.

### V. CONCLUSION

This matter should be remanded to Cook County Circuit Court as FCA US has failed to fulfill its strong burden of showing that all of the requirements for removal have been met in order to overcome the presumption that a Plaintiff is free to choose his or her forum.

                                          Respectfully submitted,

                                          CUSTY LAW FIRM, LLC

                                          <u>/s/ Brian N. Custy</u>
                                          Brian N. Custy

101 W. 84th Drive, Suite A
Merrillville, Indiana 46410
219.660.0450
bcusty@custylaw.com

## CERTIFICATE OF SERVICE

       The undersigned, BRIAN N. CUSTY, certifies that in accordance with Federal Rule of Civil Procedure 5(a), LR5.9, and the General Order on Electronic Case Filing ("ECF"), the foregoing was served pursuant to the district court's ECF system as to ECF filers, on July 28, 2017, and if any, were sent by first-class mail or by hand delivery to non-ECF filers.

                                          <u>/s/ Brian N. Custy</u>
                                          Brian N. Custy