# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MAXIMILIAN I. GROSS,                )
                                    )
          Plaintiff,                )
                                    )        **No. 17 C 4889**
          v.                        )
                                    )        **Chief Judge Rubén Castillo**
FCA US LLC and                      )
ZACHARY M. NICHOLSON,               )
                                    )
          Defendants.               )

## MEMORANDUM OPINION AND ORDER

Maximilian Gross ("Plaintiff") originally filed this suit in the Circuit Court of Cook County against Zachary Nicholson[1] ("Nicholson") and FCA US LLC ("FCA," and collectively, "Defendants"), seeking damages for personal injuries he suffered as the result of a high-speed, single-vehicle automobile accident. (R. 1-2, Am. Compl.) FCA removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. (R. 1, Notice of Removal.) Presently before the Court are dual motions by Plaintiff and Nicholson to remand pursuant to 28 U.S.C. § 1447(c). (R. 11, Pl.'s Mot.; R. 15, Def.'s Mot.) For the reasons stated below, both motions are granted.

### BACKGROUND

Plaintiff and Nicholson are good friends who, after receiving leave from the Army in March 2016, drove together to Elgin, Illinois, to visit family and friends. (R. 1-2, Am. Compl. ¶¶ 8-9.) Nicholson was driving Plaintiff's 2009 Dodge Caliber along Route 41 in Indiana, with Plaintiff in the passenger seat, when the vehicle veered off the road and rolled over, causing

---

[1] There is some inconsistency in how Mr. Nicholson's first name is spelled among the docket, pleadings, and motions. The Court adheres to "Zachary," as reflected on Mr. Nicholson's recently issued temporary Illinois driver's license. (R. 1-5, Def.'s Resp. to Suppl. Req. for Prod. at 6.)

significant damage to the car's roof structure. (*Id.* ¶¶ 8-14.) The accident left Plaintiff with severe, permanent, and progressive injuries, including quadriplegia and brain trauma. (*Id.*)

On August 2, 2016, Plaintiff filed suit in the Circuit Court of Cook County, asserting negligence and product liability claims against FCA related to the 2009 Dodge Caliber,[2] and a negligence claim against Nicholson. (R. 1-1, Compl. ¶¶ 18-50.) In the complaint, Plaintiff alleged that both he and Nicholson were citizens of Illinois, and that FCA was a citizen of England and the Netherlands. (*Id.* ¶¶ 1-2, 4.)

On June 29, 2017, FCA removed the case to this Court, asserting subject-matter jurisdiction based on diversity of citizenship. (R. 1, Notice of Removal ¶ 7.) FCA contended in its notice of removal that "Nicholson does not have a legitimate basis for Illinois citizenship" and that he was instead a citizen of either North Dakota or Kentucky, rendering diversity complete. (*Id.* ¶ 5.) On July 27, 2017, both Plaintiff and Nicholson moved to remand the case. (R. 11, Pl.'s Mot.; R. 15, Def.'s Mot.)

In their motions to remand, Plaintiff and Nicholson both argue that FCA's removal is procedurally defective because Nicholson did not consent to removal. (R. 12, Pl.'s Mem. at 5, 6-10; R. 16, Def.'s Mem. at 11-13.) Plaintiff and Nicholson both argue that complete diversity, as required under 28 U.S.C. § 1332(a), is lacking because Nicholson was a citizen of Illinois at the time the complaint was filed. (R. 12, Pl.'s Mem. at 6, 11-14; R. 16, Def.'s Mem. at 7-11.) Separately, Nicholson contends that the case must be remanded because FCA's removal was untimely under 28 U.S.C. § 1446(b)(3). (R. 16, Def.'s Mem. at 13-14.) Nicholson argues that FCA filed its notice of removal more than 30 days after receiving documents that would have alerted it that the case was removable. (*Id.*) Last, Plaintiff and Nicholson both argue that 28

---

[2] FCA was formerly known as Chrysler Group LLC. (R. 1-2, Am. Compl. ¶ 4.)

U.S.C. § 1441(b)(2) bars removal because, under a proper citizenship analysis, Nicholson is a forum defendant. (R. 12, Pl.'s Mem. at 6, 11-14; R. 16, Def.'s Mem. at 11.)

## LEGAL STANDARD

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In a case that has been removed, a plaintiff may file "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction . . . within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). "In considering a motion for remand, the court must examine the plaintiff['s] complaint at the time of the defendant's removal and assume the truth of all factual allegations contained within the original complaint." *Scouten v. MNL-FTS, LLC,* 708 F. Supp. 2d 729, 731 (N.D. Ill. 2010) (citation omitted). The removing party—here, FCA— bears the burden of establishing the propriety of removal, and any doubts concerning removal should be "resolved in favor of the plaintiff's choice of forum in state court." *Morris v. Nuzzo,* 718 F.3d 660, 668 (7th Cir. 2013); *see also Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 758 (7th Cir. 2009) ("[F]ederal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court.").

## ANALYSIS

### I.    Timeliness of Removal

The Court first addresses Nicholson's argument that removal was untimely under 28 U.S.C. § 1446. Section 1446 provides that a notice of removal must be filed "within 30 days after the receipt by the defendant . . . of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C § 1446(b)(1). However, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after

receipt by the defendant . . . of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is . . . or has become removable." 28 U.S.C. § 1446(b)(3). Nicholson does not contend that the case as stated by the initial complaint was removable; the question is only whether removal was timely under Section 1446(b)(3).

FCA contends that removal was timely because it filed the notice of removal within 30 days of receiving a transcript of Nicholson's deposition.[3] (R. 1, Notice of Removal ¶ 8.) FCA asserts that Nicholson's deposition was the first time it ascertained that the case was removable, and that it timely removed the case within 30 days of receiving the deposition transcript.[4] (R. 27, Def.'s Resp. at 15.) Nicholson counters that removal was untimely because discovery produced long before his deposition provided much of the information on which FCA relies to establish federal jurisdiction. (R. 16, Def.'s Mem. at 13-14.) Specifically, Nicholson points out that the police report filed after the accident listed a North Dakota address for him and showed that he possessed a North Dakota driver's license at the time. (*Id.*) Nicholson also asserts that documents produced before his deposition showed that he moved to Chicago and obtained an Illinois driver's license after the accident, but shortly before Plaintiff filed suit. (*Id.*) Nicholson contends that the 30-day removal clock began well before his deposition, and that his deposition transcript was not a paper "from which it may *first* be ascertained" that the case was removable. *See* 28 U.S.C. § 1446(b)(3) (emphasis added).

To trigger the 30-day removal clock under Section 1446(b)(3), the defendant must receive a pleading or other litigation paper that "affirmatively and unambiguously reveals that

---

[3] The phrase "other paper" in Section 1446(b)(3) includes deposition transcripts, interrogatory answers, and any other official papers filed or exchanged in connection with the action. *Martin v. Global Experience Specialists, Inc.*, No. 13 C 7749, 2014 WL 2598788, at *6 (N.D. Ill. June 10, 2014).

[4] FCA represents that it received Nicholson's deposition transcript on June 5, 2017, 24 days before it removed the case to this Court. (R. 27, Def.'s Resp. at 15 & n.45.)

the predicates for removal are present." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013). "[T]he timeliness inquiry is limited to . . . examining [the] contents of the clock-triggering pleading or other litigation paper; the question is whether *that document*, on its face or in combination with earlier-filed pleadings, provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable." *Id.* at 825. "This bright-line rule promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants." *Id.* at 824. It is important to note, however, that "[t]he moment a case becomes removable and the moment the 30-day removal clock beings to run 'are not two sides of the same coin.'" *Id.* (citation omitted). In other words, a case may become removable to federal court without the 30-day clock ever being triggered. *See id.* at 825 ("The earliest possible trigger for the removal clock was [plaintiff's] response to [defendant's] requests for admission seeking formal clarification of the theory of damages. . . . Even that document, however, did not affirmatively specify a damages figure . . . . So the removal clock never actually started to run."); *Hostetler v. Johnson Controls, Inc.*, No. 3:15-CV-226 JD, 2016 WL 3662263, at *4 n.2 (N.D. Ind. July 11, 2016) ("The removal clocks only set deadlines, they do not create exclusive windows within which a case must be removed, so a defendant can remove a case even if the removal clocks never begin.").

The Court concludes that FCA's removal was not untimely because the 30-day removal clock under Section 1446(b)(3) never started. FCA asserts subject-matter jurisdiction in this Court based on diversity of citizenship, claiming that diversity exists because Nicholson was in

fact a citizen of North Dakota,[5] not Illinois, at the time the suit was filed. (R. 1, Notice of

Removal ¶¶ 5-6.) Nicholson disputes that his deposition was the first time FCA could have

ascertained his North Dakota citizenship. However, none of the pre-deposition discovery

materials cited by Nicholson affirmatively and unambiguously revealed that he was a citizen of

North Dakota at the time this suit was commenced. Not even Nicholson's deposition

affirmatively and unambiguously revealed this. The 30-day removal clock therefore never started

to run. *See Walker*, 727 F.3d at 824-25.

   Though the police report cited by Nicholson lists a North Dakota address for him and

indicates that he held a North Dakota driver's license at the time of the accident, (R. 1-8, Crash

Report at 4), this does not affirmatively and unambiguously reveal that he was a citizen of North

Dakota. "Citizenship depends not on residence but on domicile, which means the place where a

person intends to live in the long run." *RTP LLC v. ORIX Real Estate Capital, Inc.*, 827 F.3d

689, 692 (7th Cir. 2016); *see also Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014)

("For purposes of the diversity jurisdiction, citizenship differs from residence. Citizenship means

domicile (the person's long-term plan for a state of habitation) rather than just current

residence."). Domicile, in turn, requires "(1) physical presence or residence in a state and (2) an

intent to remain in the state." *Ner Tamid Congregation of N. Town v. Krivoruchko*, 620 F. Supp.

2d 924, 931 (N.D. Ill. 2009); *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30,

48 (1989) ("[D]omicile is established by physical presence in a place in connection with a certain

state of mind concerning one's intent to remain there."). Citizenship thus has a "mental

dimension," *Strabala v. Zhang*, 318 F.R.D. 81, 97 (N.D. Ill. 2016) (citation omitted), that is not

---

[5] In FCA's response to the motions to remand, FCA dropped its contention that Nicholson was a citizen of Kentucky when the case was filed, and now asserts only that he was a citizen of North Dakota. (R. 27, Def.'s Resp. at 1.)

settled simply by reference to Nicholson's then-current residence or the state that issued his driver's license. *See Calvert v. Office Depot, Inc.*, No. 14-CV-6145, 2014 WL 7055460, at *2 (N.D. Ill. Dec. 11, 2014) ("The mere listing of an address on a report filed sixteen months prior to the Complaint may establish residency, but it does not establish citizenship."). In addition, neither Nicholson's address nor his driver's license as of March 2016—when the accident occurred—affirmatively and unambiguously reveals his long-term plan for a state of habitation five months later—when the complaint was filed and the time at which diversity must exist. *See id.*; *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996) ("Jurisdiction depends on citizenship at the time a case begins."). At most, these pieces of information provided a clue that Nicholson may have had diverse citizenship from Plaintiff. However, what a defendant might have discovered by following up on clues or suggestions that federal jurisdiction may exist is irrelevant to the timeliness inquiry. *See Walker*, 727 F.3d at 825 ("Assessing the timeliness of removal should not involve a fact-intensive inquiry about what the defendant . . . should have discovered through independent investigation."); *Calvert*, 2014 WL 7055460, at *2 (rejecting argument that "clues regarding [plaintiff's] citizenship" triggered the 30-day removal clock).[6]

As to the documents purportedly showing that Nicholson obtained his Illinois driver's license and moved to Chicago after the accident, it is not at all clear—and Nicholson does not explain—how evidence that a person obtained an Illinois driver's license and moved to Chicago affirmatively and unambiguously reveals that the person was a citizen of North Dakota.

Nicholson's deposition transcript provided a stronger suggestion that he may have been a citizen of North Dakota at the time the complaint was filed, but even that was not affirmative and

---

[6] In addition, Nicholson fails to specify when the police report was produced to FCA. Thus, even if the report triggered the 30-day removal clock by unambiguously revealing that Nicholson was a citizen of North Dakota, the Court would be unable to determine *when* the clock started because the record does not reflect when the report was "recei[ved] by the defendant." *See* 28 U.S.C. § 1446(b)(3).

unambiguous. Nicholson, who is 22 years old, testified at his deposition that he moved to Fargo, North Dakota, with his mother during middle school;[7] lived there for approximately 9 years until June 2014, when he graduated high school; enlisted in the army during his senior year; attended basic training for three months at Fort Benning, Georgia, immediately after graduating, from approximately June to September 2014; has been stationed at Fort Campbell, Kentucky, continuously since October 2014 except for a nine-month deployment to Afghanistan from August 2016 to May 2017; and sometimes uses his leaves to visit his mother and younger brother, who still live in North Dakota. (R. 1-3, Nicholson Dep. Tr. at 6-11, 13-15, 22, 26-27.) However, Nicholson also testified that he: does not have an apartment or house in North Dakota; considers North Dakota to be his "previous home"; and, after the accident but before this suit was filed, decided that he would settle down in the Chicago area after he is finished serving in the Army. (*Id.* at 31, 33-34, 111-12, 114-15.) He also registered to vote in Illinois, signed a lease for an apartment in Chicago, and obtained an Illinois driver's license (relinquishing his North Dakota driver's license to do so). (*Id.*)

It is clear from Nicholson's deposition transcript that his domicile was North Dakota from the time he moved there in middle school with his mother to the time he began his service in the Army. *See Miss. Band of Choctaw Indians*, 490 U.S. at 48 ("Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents."); 13E WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3615 (2017 ed.) (explaining that where "separation of the parents . . . results in custody passing to the mother," a minor's domicile is that of the mother). And it remained his domicile for at least some of the time he has been serving in the Army—even though he attended basic training in Georgia,

---

[7] Nicholson lived in Clearwater, Florida, with both his parents until they separated, at which point he moved with his mother to North Dakota. (R. 1-3, Nicholson Dep. Tr. at 7-8.)

was stationed in Kentucky, and deployed to Afghanistan for nine months—because "[s]ervice personnel are presumed not to acquire a new domicile when they are stationed in a place pursuant to orders; they retain the domicile they had at the time of entry into the service." 13E WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3617 (2017 ed.); *see also United States v. City of Highwood*, No. 88 C 4827, 1989 WL 65043, at *1 (N.D. Ill. June 9, 1989) ("[T]he rule is clear that a 'serviceman is presumed not to acquire a new domicile when he is stationed in a place pursuant to orders; he retains the domicile he had at the time of entry into the service.'" (quoting WRIGHT & MILLER))

However, a person can acquire a new domicile upon a "change of residence coupled with the intention of remaining indefinitely at the new residence." *Pedersen v. Chi. Transit Auth.*, No. 96 C 1588, 1996 WL 328039, at *2 (N.D. Ill. June 11, 1996); *see also Strabala*, 318 F.R.D. at 99 ("[F]or Illinois to no longer be [plaintiff's] domicile, there must be evidence not only that [he] physically resides at a new location but that he does so with the intention to remain there indefinitely, or, as some federal courts articulate it, the absence of any intention to go elsewhere." (citation and internal quotation marks omitted)). Nicholson's course of conduct and statements of intent related to settling down in Chicago following his Army service, as reflected in his deposition transcript, raise a real and substantial question as to whether he acquired a new domicile—*i.e.*, Illinois—before this suit was filed. For purposes of the timeliness inquiry, the Court need not resolve this question; it is sufficient that his deposition transcript left this question open. *See Walker*, 727 F.3d at 824 (cautioning not to "conflate[] the timeliness question with the factual inquiry into whether the case is substantively appropriate for removal"). Because even Nicholson's deposition transcript did not affirmatively and unambiguously reveal that he was a

citizen of North Dakota at the time the suit was filed, the 30-day removal clock never started. *See id.* at 824-25. FCA's removal was therefore not untimely under Section 1446(b)(3).

## II.  Lack of Consent

The Court next addresses Plaintiff's and Nicholson's argument that FCA's removal of this case was procedurally defective because Nicholson did not join in or consent to the removal. Section 1446 requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Plaintiff and Nicholson assert—and FCA appears to concede—that Nicholson did not join in or consent to removal. (R. 12, Pl.'s Mem. at 6-10; R. 16, Def.'s Mem. at 12; R. 1, Notice of Removal at 14.) FCA argues, however, that Nicholson's consent was not required because his presence as a Defendant is a case of fraudulent joinder—a putatively non-diverse party named as a defendant solely to destroy diversity of citizenship and thereby defeat removability. (R. 27, Def.'s Resp. at 14-15.) Plaintiff and Nicholson deny that Nicholson is fraudulently joined and maintain that his consent is therefore required for removal. (R. 12, Pl.'s Mem. at 6-10; R. 16, Def.'s Mem. at 11-13.)

Consent for removal under Section 1446(b)(2)(A) is not required from fraudulently joined defendants. *Bahalim v. Ferring Pharm., Inc.*, No. 16 C 8335, 2017 WL 118418, at *5 (N.D. Ill. Jan. 12, 2017); *Midland Mgmt. Co. v. Am. Alt. Ins. Corp.*, 132 F. Supp. 3d 1014, 1024 (N.D. Ill. 2015). "Fraudulent joinder occurs either [1] when there is no possibility that a plaintiff can state a cause of action against [the] non-diverse defendant[] in state court or [2] where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). A defendant faces a "heavy burden" to establish fraudulent joinder. *Schur*, 577 F.3d at 764 (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)); *Whelchel v. Briggs & Stratton Corp.*, 850 F. Supp. 2d 926, 931 (N.D. Ill. 2012).

"[S]ome courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur*, 577 F.3d at 764. In assessing a claim of fraudulent joinder, "courts are not limited to the allegations of the pleadings but may pierce the pleadings and consider summary judgment-type evidence such as affidavits and deposition testimony." *CC Indus., Inc. v. ING/Reliastar Life Ins. Co.*, 266 F. Supp. 2d 813, 815-16 (N.D. Ill. 2003) (citation and internal quotation marks omitted).

FCA contends that this case involves the second type of fraudulent joinder—fraudulent pleading of jurisdictional facts. (R. 27, Def.'s Resp. at 3.) Cases involving this form of fraudulent joinder are exceedingly rare.[8] *See Coffman v. Dole Fresh Fruit Co.*, 927 F. Supp. 2d 427, 434 (E.D. Tex. 2013) ("Few courts have addressed fraudulent joinder based on actual fraud in the pleading of jurisdictional facts."); *Randle v. SmithKline Beecham Corp.*, 338 F. Supp. 2d 704, 707 n.4 (S.D. Miss. 2004) ("[T]here is a dearth of case law . . . and hence, little guidance on what must be present before a finding of actual fraud in pleading jurisdictional facts[.]"); *Lyons v. Lutheran Hosp. of Ind.*, No. 1:04-cv-728, 2004 WL 2272203, at *2 (S.D. Ind. Sept. 15, 2004)

---

[8] Indeed, to date there do not appear to be any cases in this Circuit where a defendant argued, or a court found, fraudulent joinder based on outright fraud in pleading jurisdictional facts. *See, e.g., Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994) ("[Defendant] does not claim that there was 'outright fraud' in [plaintiff's] pleadings of jurisdictional facts."); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) ("[I]n most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success[.]"). Such cases are almost as rare outside this Circuit as well. *See, e.g., Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) ("The district court relied on the second prong of the fraudulent joinder test . . . to conclude fraudulent joinder had been established here."); *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 405 (5th Cir. 2004) ("Because neither the parties nor the district court contends there was actual fraud, we look only to the second test."); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) ("[Defendant] does not allege any bad faith in pleading[.]"); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("[T]he parties do not suggest that there has been outright fraud in the plaintiff's pleading of jurisdictional facts[.]" (internal quotation marks omitted)); *Cantor v. Wachovia Mortg., FSB*, 641 F. Supp. 2d 602, 607 (N.D. Tex. 2009) ("Most every case pertaining to improper joinder in this circuit . . . appl[ied] the second prong of the test, inability of the plaintiff[] to establish a cause of action against the non-diverse party." (citation omitted)).

("The latter form of fraudulent joinder is rare and is not alleged to have occurred here."). To establish fraudulent joinder based on outright fraud in pleading jurisdictional facts, there must be "more than a mistake or omission in the pleadings." *Coffman*, 927 F. Supp. 2d at 435. The removing defendant must "prove that the plaintiff either actually concealed, or knowingly made false representations, regarding . . . the citizenship of the parties, and/or the amount in controversy." *Cantor v. Wachovia Mortg., FSB*, 641 F. Supp. 2d 602, 607 (N.D. Tex. 2009); *see also Wells' Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 157 F. Supp. 2d 1018, 1036 (N.D. Iowa 2001) ("[T]he 'fraud' consists of knowingly—or possibly mistakenly—pleading that a defendant is a citizen of the same state as the plaintiff, when the defendant in fact is a citizen of a different state.").

Here, FCA argues that Plaintiff "falsely pled that Nicholson was a citizen of Illinois (the same state of citizenship as Plaintiff) to give the appearance that complete diversity did not exist." (R. 27, Def.'s Resp. at 2.) FCA contends that neither Nicholson's subjective intent nor his objective conduct sufficed to change his citizenship from North Dakota to Illinois before this suit was filed. (*Id.* at 6-11.) FCA also argues that "the record indicates that [Plaintiff and Nicholson] colluded in a failed attempt to change Nicholson's citizenship between the date of the subject accident [and] the filing of this lawsuit." (*Id.* at 3.) FCA contends that this alleged collusion demonstrates fraud in that it shows Plaintiff knew his jurisdictional allegation regarding Nicholson's citizenship was false. (*Id.* at 11-14.)

Upon review of Nicholson's entire course of conduct, the Court is not persuaded that FCA has carried its heavy burden of demonstrating fraud in Plaintiff's allegation that Nicholson was a citizen of Illinois. As previously noted, citizenship in this context means domicile, which generally speaking is "the place where a person intends to live in the long run." *RTP LLC*, 827

F.3d at 692. Domicile is established by "(1) physical presence or residence in a state and (2) an intent to remain in the state." *Ner Tamid Congregation*, 620 F. Supp. 2d at 931. Because subjective intent may be pliable, "courts primarily look at intent through objective factors," including "current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments." *Strabala*, 318 F.R.D. at 97; *see also Ner Tamid Congregation*, 620 F. Supp. 2d at 931 (articulating same factors). Nevertheless, statements of subjective intent may be given "some or even heavy . . . weight" if they are consistent with the objective facts in the record. *Strabala*, 318 F.R.D. at 102 (citation and internal quotation mark omitted). In addition, no list of objective factors is exclusive; in ascertaining intent, "[i]t is well-established that . . . a party's entire course of conduct may be taken into account." *Ner Tamid Congregation*, 620 F. Supp. 2d at 943 (quoting *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993)). Consequently, "each case necessarily turns on its own unique combination of facts." *Strabala*, 318 F.R.D. at 97-98.

As discussed above, the record reflects that Nicholson's constructive domicile was North Dakota at least until he graduated high school, because that is where his mother lived. *See Miss. Band of Choctaw Indians*, 490 U.S. at 48; 13E WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3615 (2017 ed.). Neither attending basic training at Fort Benning, Georgia, nor later being stationed at Fort Campbell, Kentucky, without more, caused him to lose his North Dakota domicile. 13E WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3617 (2017 ed.).

However, Nicholson testified at his deposition that, shortly after the accident, he made a decision to settle down in the Chicago area after completing his Army service. (R. 1-3, Nicholson Dep. Tr. at 31, 111-12, 114-15; *see also id.* at 126-27 ("I have planned on becoming a

resident of Illinois ever since the accident happened[.]").) Nicholson explained that Plaintiff was a platoon-mate and one of his best friends in the Army—that they would "hang out . . . pretty much everyday."[9] (*Id.* at 28, 38, 112, 115.) After the accident, Nicholson decided that he wanted to live near Plaintiff in order to help with his recovery. (*See id.* at 112 ("[H]e was my best friend there at Fort Campbell, and after everything that happened, I just feel like I should be with him[.]").) To that end, Nicholson signed a lease for an apartment in downtown Chicago around the same time.[10] (*Id.* at 33-36, 113-14.) He also relinquished his North Dakota driver's license in order to obtain an Illinois driver's license.[11] (*Id.* at 114, 125-26.) To support himself in Chicago, Nicholson began to consider job opportunities in Chicago. (*Id.* at 12.)

There is no question—and FCA does not dispute—that as of the time this suit was filed, Nicholson established physical presence in Illinois sufficient to satisfy the first element of domicile. Immediately following the accident, Nicholson came to Chicago to see Plaintiff in the hospital. (*Id.* at 112, 117.) Since then, Nicholson has continued to travel to Chicago during his leaves from the Army to visit and support Plaintiff. (*Id.* at 37, 95, 112.)

As to the second element—intent—the Court is satisfied that Nicholson's subjective intent and his objective course of conduct related to settling down in Chicago are sufficient for

---

[9] Plaintiff testified that he likewise considers Nicholson one of his best friends, and that they still "talk all the time." (R. 1-7, Pl. Dep. Tr. at 29; *see also id.* at 28 ("**Q.** Did you have a best friend in the Army? **A.** Two. **Q.** Who were those? **A.** Robert Peppler and [Nicholson].").)

[10] The record is unclear on exactly when Nicholson signed the lease, but Nicholson testified that he did so "a little after the accident had happened." (R. 1-3, Nicholson Dep. Tr. at 113.)

[11] The document in question actually appears to be a temporary—rather than permanent—Illinois driver's license. (R. 1-5, Def.'s Resp. to Suppl. Req. for Production at 6.) However, the parties do not attach any significance to this distinction, and the Court sees no reason to either.

Plaintiff to have in good faith alleged that Nicholson was a citizen of Illinois.[12] The Court affords significant weight to Nicholson's stated, subjective intent to make Chicago his home because it is supported by a rationale that is convincing under the circumstances. *See Strabala*, 318 F.R.D. at 102. Specifically, it is entirely understandable that, after enduring a tragic car accident that left his best friend paralyzed, Nicholson would choose to live near his friend when his Army service contract expires. Nicholson's objective course of conduct is consistent with, and bolsters, his stated intent. As already noted, shortly after the accident, Nicholson signed a lease for an apartment in downtown Chicago, (R. 1-3, Nicholson Dep. Tr. at 33-36, 113-14), relinquished his North Dakota driver's license in order to obtain an Illinois driver's license, (*id.* at 114, 125-26), and looked into applying for a job with Metra following his army service, (*id.* at 12). Notably, Nicholson also testified that he had *not* looked into any post-Army job prospects in North Dakota. (*Id.* at 125.) He also registered to vote in Illinois. (*Id.* at 113-14.) While not extensive, the Court finds these objective indicia of intent sufficient in the unique circumstances presented by a young person, like Nicholson, who entered military service immediately after high school and has consequently never developed the kind of settled ties that traditionally might dictate domicile. *See Carrington v. Rash*, 380 U.S. 89, 96 (1965) (recognizing that "special problems may be involved in determining whether servicemen have actually acquired a new domicile" while enlisted).

---

[12] The Court need not necessarily conclude that Plaintiff's jurisdictional allegation regarding Nicholson's citizenship was correct, only that it was not fraudulent. *See Coffman v. Dole Fresh Fruit Co.*, 927 F. Supp. 2d 427, 435 (E.D. Tex. 2013) (explaining that there must be "more than a mistake or omission in the pleadings" to establish fraudulent joinder); *Cantor*, 641 F. Supp. 2d at 607 (explaining that "the plaintiff [must have] either actually concealed, or knowingly made false representations, regarding . . . the citizenship of the parties"). Otherwise, every run-of-the-mill dispute over a defendant's citizenship would potentially be a case of fraudulent joinder.

FCA points to a number of circumstances that, in its view, made it not just incorrect but fraudulent for Plaintiff to have pled that Nicholson was a citizen of Illinois. Regarding Nicholson's apartment in downtown Chicago, FCA points out that: the apartment was made available to Nicholson rent-free by a friend of Plaintiff's father; Nicholson had never been to the apartment until the weekend of his May 2017 deposition; the apartment is fully furnished and Nicholson therefore has no personal property there; Nicholson had not received any mail there; and Nicholson was not listed in the tenant directory of the building's intercom system. (R. 27, Def.'s Resp. at 7, 12; *see also* R. 1-3, Nicholson Dep. Tr. 33-35.) FCA contends that these facts show the apartment is essentially a sham indicia of intent that Plaintiff and Nicholson colluded in setting up. (R. 27, Def.'s Resp. at 1-2, 11-14.)

The Court is not persuaded and does not find anything untoward about the circumstances under which Nicholson secured his Chicago apartment. That it was arranged for at no cost by a friend of Plaintiff's father is entirely understandable given the close relationship between Nicholson and Plaintiff and Nicholson's desire to live in Chicago to support Plaintiff's recovery. Nicholson's extended absence from the apartment, as Plaintiff points out, is explained by the fact that Nicholson was deployed to Kabul, Afghanistan, from August 2016 until May 2017—the bulk of the time that elapsed between the accident and Nicholson's deposition. (R. 29, Pl.'s Reply at 5; *see also* R. 1-3, Nicholson Dep. Tr. 22, 120-21.) The Court also does not find it significant that the apartment came fully furnished or that Nicholson had not received mail there; as Nicholson points out, it would not make sense for him to have mail sent to the apartment or keep his own furniture or personal belongings there while he is still enlisted and stationed at Fort Campbell. (R. 28, Def.'s Reply at 11.) Nicholson's absence from the building's tenant directory also is not persuasive evidence of a sham residence; there are numerous legitimate reasons his

name may not be listed, including that Nicholson had no reason to expect visitors at the apartment while he was deployed in Afghanistan or stationed at Fort Campbell. In any event, FCA's counsel inquired point-blank at Nicholson's deposition whether anyone asked him to get an apartment in Chicago in order to create the appearance of citizenship in Illinois. (R. 1-3, Nicholson Dep. Tr. at 126 ("**Q.** Has anyone asked you to . . . create this apartment situation to attempt to claim residency in Chicago or Illinois?").) Nicholson denied this proposition and explained that he had "planned on becoming a resident of Illinois ever since the accident happened." (*Id.*) The Court has no reason to doubt the veracity of Nicholson's testimony given under oath.

FCA also questions the circumstances under which Nicholson obtained his Illinois driver's license. FCA points out that the license was issued just seven days before Plaintiff filed this suit in state court and argues that the timing shows an effort by Nicholson—perhaps in collusion with Plaintiff—to manufacture Illinois citizenship. (R. 27, Def.'s Resp. at 1, 8-9, 12; R. 1-5, Def.'s Resp. to Suppl. Req. for Prod. at 6.) The Court is not persuaded that this timing reflects anything other than the limited opportunities available to Nicholson to address his personal affairs in light of his military obligations. As already noted, Nicholson deployed to Afghanistan in August 2016. (R. 1-3, Nicholson Dep. Tr. 22, 120-21.) He testified that he was in Chicago visiting Plaintiff the month before, in July 2016. (*Id.* at 39-40.) Nicholson explained that at that time, his old North Dakota driver's license "was expiring . . . anyways, so I was here [in Chicago], and I wanted to become a resident of Illinois, so, I ended up getting [an Illinois license] while I was up here." (*Id.* at 125.) The Court sees nothing peculiar about using the opportunity presented by being in Chicago to address personal affairs such as obtaining a driver's license, particularly given that Nicholson knew he would be deploying overseas the next

month. And as with the apartment, FCA's counsel directly inquired of Nicholson—twice—whether anyone asked him to obtain an Illinois driver's license in order to create the appearance of citizenship in Illinois. (*Id.* at 126 ("**Q.** Has anyone asked you to get this driver's license . . . to attempt to claim residency in Chicago or Illinois?"); *id.* at 125 ("**Q.** All right. Did anyone ask you to get an Illinois driver's license?").) Nicholson denied this proposition, (*id.* at 125-26), and the Court has no reason to doubt his veracity.

FCA also points to a host of other, more minor circumstances as evidence of fraud in Plaintiff's allegation that Nicholson was a citizen of Illinois. The Court finds it unnecessary to address each of these circumstances in detail and is not persuaded that they demonstrate fraud.[13] At most, FCA's remaining arguments present "the kind of jockeying for jurisdictional position that frequently occurs when parties believe that the forum in which their case is litigated may affect the outcome in some fashion." *Trevino v. U-Haul Co. of Ill.*, No. 08-CV-2255, 2008 WL 4951321, at *6 (N.D. Ill. Nov. 18, 2008). FCA has failed to carry its heavy burden of showing fraudulent joinder, and Nicholson's consent for removal was therefore required under Section 1446(b)(2)(A). Because Nicholson did not consent to removal, the case must be remanded. *See Compassionate Pain Mgmt., LLC v. Frontier Payments, LLC*, No. 17 C 5568, 2017 WL 4423409, at *5 (N.D. Ill. Oct. 4, 2017) (remanding to state court based on failure to join or obtain consent from all defendants for removal).[14]

---

[13] For example, as evidence of an intent not to adopt an Illinois domicile, FCA points to the fact that Nicholson retained a North Dakota area code for the new mobile number that he obtained in May 2017. (R. 27, Def.'s Resp. at 8; *see also* R. 1-3, Nicholson Dep. Tr. at 14-15.) The Court finds this unpersuasive. Nicholson obtained his new number almost a year after this suit was filed; it is therefore not probative of citizenship at the relevant time. *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996). In addition, individuals can and frequently do move long distances but retain the same mobile phone number as a matter of continuity and convenience. In this day and age, a mobile phone number is not probative of a person's domicile.

[14] Because lack of consent under Section 1446(b)(2)(A) is a sufficient basis to remand the case, the Court declines to consider Plaintiff's and Nicholson's remaining arguments supporting remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's and Nicholson's motions to remand (R. 11; R. 15) are GRANTED. The case is remanded to the Circuit Court of Cook County, Illinois, for further proceedings.

ENTERED:

Chief Judge Rubén Castillo
United States District Court

Dated: December 7, 2017